**F I L E D**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LINDA K. GREENSHIELDS,

      Plaintiff-Appellant,

v.

INDEPENDENT SCHOOL DISTRICT
I-1016 OF PAYNE COUNTY,
OKLAHOMA, a political subdivision
of the State of Oklahoma, the
Stillwater School District; WALTER
SWANSON; CHRISTI WINKLE; GIL
EMDE; MIKE WOODS; MICHAEL
DICKS; CRAIG CARTER; JOSEPH
HANEY,

      Defendants-Appellees.

No. 04-6195
(D.C. No. 03-CV-00020-F)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **MURPHY**, Circuit Judges, and **ARMIJO**, District Judge[**].

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable M. Christina Armijo, United States District Court, District of New Mexico, sitting by designation.

## I.   INTRODUCTION

Second-grade teacher Linda K. Greenshields became embroiled in a conflict with the Stillwater School District ("Stillwater") after Stillwater began requiring teachers to use "learning modules" for science instruction. After a protracted dispute, the Stillwater Board of Education ("Board") voted not to reemploy Greenshields. Greenshields brought suit under 42 U.S.C. § 1983, claiming Stillwater had retaliated against her for engaging in speech protected by the First Amendment. The United States District Court for the Western District of Oklahoma granted summary judgment to Stillwater. Greenshields appeals, alleging the district court erred by improperly weighing evidence and failing to analyze certain elements of her claim. Greenshields further asserts the district court erred when it determined she did not raise a genuine issue of material fact with respect to the motives underlying Stillwater's decision not to reemploy her. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and **affirm**.

## II.   BACKGROUND

The Board approved a Comprehensive Local Education Plan ("CLEP") for the years 2001 to 2005. The CLEP set the curriculum and standards for the school district. With respect to science education, it required elementary school teachers to employ an inquiry-based approach using "learning modules."

Learning modules contain a teacher's manual, student workbooks, and consumable materials for classroom experiments and observation activities.

Greenshields has been an elementary school teacher in public schools for more than thirty years. Beginning in 2000, Greenshields attended professional development classes which trained educators how to teach science using the learning modules. After attending the classes and using the learning modules, Greenshields felt the modules were inferior to the methods and materials she had traditionally used to teach science. She also believed the training classes required teachers to spend too much time away from the classroom, adversely affected student learning, and infringed upon teachers' discretion.

In 2000 and into the early part of 2001, Greenshields began to write letters to Stillwater's assistant superintendent and the president of the school board, articulating her concerns about the use of learning modules for science instruction. Moreover, despite administrative directives instructing Greenshields to attend training workshops and to implement the required science curriculum, Greenshields told school officials she did not plan to attend additional teacher training workshops or use the learning modules in her classroom.

Because of Greenshields' refusal to comply with administrative direction, the school principal, Dr. Christi Winkle, issued Greenshields an Admonishment and Plan for Improvement ("API") on June 6, 2001. The API listed at least five

instances when Greenshields did not comply with instructions issued by school administrators and indicated additional insubordination was unacceptable. It also noted failure to improve could result in Greenshields' dismissal.

Contrary to directions contained in the June API, Greenshields failed to return a signed copy of the API, failed to indicate a preferred teacher training date, failed to attend teacher training, failed to meet with the assistant superintendent, and failed to communicate with the assistant superintendent. Citing these failures as examples of "unwillingness to comply with reasonable requests," Winkle issued Greenshields another API on August 6, 2001. The August 6 API again warned Greenshields that failure to comply with the terms of the API could result in her dismissal. From November 2001 to July 2002, Greenshields filed several grievances with the Board regarding the dispute over the use of the learning modules. The Board denied her grievances.

The next school year, Greenshields again refused to teach science using the learning modules, and continued to disregard instructions given to her by her supervisors. Among other things, Greenshields did not inventory the contents of the "Soils" learning module when it was delivered to her classroom in the fall of the 2002,[1] and refused to meet with Winkle to discuss the science learning

_____

[1]In a letter from Greenshields to Winkle dated September 18, 2002, Greenshields explained she would not inventory the "Soils" learning module as

(continued...)

-4-

modules. Winkle issued Greenshields two more APIs in October and November of 2002.

On December 3, 2002, Winkle and Stillwater School District Superintendent Dr. Walter Swanson met with Greenshields and her attorney to discuss the October and November APIs. In a memorandum recapitulating the meeting, Winkle cataloged a variety of instances when Greenshields did not comply with administrative directives set forth in the APIs. In the memorandum, Winkle noted that she considered Greenshields' performance and conduct to be unsatisfactory. Winkle directed Greenshields to instruct students using the "Changes" learning module and requested that Greenshields advise her of three specific times when she could observe Greenshields teaching the module.

Later that December, Greenshields filed suit against Stillwater in Oklahoma state court. Greenshields sought a declaratory judgment that her teaching contract and the United States Constitution guaranteed her academic freedom and that she

_____

[1](...continued)
instructed. She told Winkle,

> Since you requested the Soils Science Module, completion of the check-out form and inventory is your responsibility, not mine. Moreover, you are requested to immediately remove the science module box from my classroom and return it to the Material Resources Center. Your demands that I inventory science module boxes, that I did not requisition, constitutes continued administrative harassment and willful perpetuation of a hostile work environment for me that has never been resolved.

ROA, Appellant's App. vol. I at 198.

was not required to teach science using the learning modules. Stillwater removed the suit to federal court.

When the second semester started, Greenshields suggested Winkle conduct a classroom observation either in the morning or early afternoon of January 9, 2003. Winkle observed Greenshields' class at the suggested time, expecting to see Greenshields teach her class using the "Changes" learning module. Instead of teaching from the module, however, Greenshields administered a practice spelling test to her students. After the classroom observation, Winkle wrote a memorandum to Greenshields documenting Greenshields' failure to teach from the "Changes" module and stating that Greenshields had failed to meet many of the conditions of her APIs. Winkle's memorandum also asked Greenshields to provide additional times when she could observe Greenshields teach the module. Greenshields did not suggest any additional observation dates.

Despite the growing conflict between Greenshields and school administrators in 2001 and 2002, Winkle's evaluations of Greenshields for those years indicate Greenshields met the expected standards in almost all categories listed on Stillwater's Teacher Performance Analysis Report ("TPAR") form.[2] In March of 2003, however, in a TPAR based on the January 9 classroom

---

[2]Greenshields' 2001 report did indicate, however, that Greenshields needed refinement in the category labeled "Responds professionally to administrative requests and direction."

observation, Winkle determined Greenshields needed refinement or improvement in twenty-five of the thirty-three categories listed on the form.[3] The TPAR recommended nonrenewal of Greenshields' teaching contract. According to Greenshields, the 2003 TPAR "was by far the worst performance evaluation [she] ha[d] ever received." ROA, Appellant's App. vol. II at 376.

Shortly after giving Greenshields the negative TPAR, Winkle issued another API to Greenshields, citing a variety of violations of school policy and other shortcomings. In April, the Board notified Greenshields that it had received from Superintendent Swanson a recommendation that she not be reemployed. In June, the Board held a due process hearing to determine whether to reemploy Greenshields. After hearing evidence presented by both Greenshields and representatives of the school administration, the Board determined Greenshields should not be reemployed due to "willful neglect of duty," "incompetency," and "unsatisfactory teaching performance." In a "Memorandum of Decision," the Board listed findings of fact in support of its decision. Among other things, the Board found by a preponderance of the evidence that Greenshields repeatedly refused to follow the directives of her supervisors and violated school policy. The Board found such conduct to be "totally inexcusable and unacceptable."

---

[3]In a two-page "Evaluation Summary," Winkle explained the basis for each of Greenshields' low marks on the TPAR.

None of the Board's findings of fact referenced Greenshields' letters to school administrators and members of the Board or her lawsuit against Stillwater.

Greenshields exercised her right to have the Board's decision reviewed *de novo* by an Oklahoma state court. After a bench trial, the court determined Oklahoma law allows teachers to select the methodology by which they teach their students. Transcript of Court's Ruling at 37–38, *Greenshields v. Stillwater Sch. Dist.*, No. CJ-2003-428 (Okla. D. Ct. 2003). Accordingly, the court found Greenshields' teaching was not incompetent or unsatisfactory, and she did not willfully neglect her duties. *Id*. at 40. The state court ordered Stillwater to reinstate Greenshields as an elementary school teacher. *Id*.

After the Oklahoma state court's ruling, Greenshields amended her complaint in federal court. Greenshields brought a claim under 42 U.S.C. § 1983, alleging Stillwater had retaliated against her for engaging in speech protected by the First Amendment. Stillwater filed a motion for summary judgment. The district court determined Greenshields presented no evidence to controvert the Board's assertion that it decided to not reemploy Greenshields because she refused to follow her supervisors' directives and failed to comply with APIs, not because she wrote letters to school administrators and members of the Board and filed a lawsuit against Stillwater. *Greenshields v. Stillwater Sch. Dist.*, No. CIV-03-0020-F, at 5 (W.D. Okla. May 24, 2004). The district court granted

Stillwater's motion for summary judgment.  *Id.* at 6.  Greenshields appeals from the district court's decision, arguing the court erred when it failed to properly analyze her claim and when it concluded she did not raise a genuine issue of material fact with respect to the motives underlying Stillwater's decision not to reemploy her.

## III.   ANALYSIS

This court reviews *de novo* a grant of summary judgment, using the same legal standard as used by the district court. *Barker v. City of Del City*, 215 F.3d 1134, 1137 (10th Cir. 2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a grant of summary judgment, this court views the evidence in the light most favorable to the nonmoving party. *Barker*, 215 F.3d at 1137. "In First Amendment cases, an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." *Id.* (quotations omitted).

### A.   District Court's Mode of Analysis

This court uses a four-part test to analyze cases of employment retaliation involving First Amendment claims. *Schrier v. Univ. of Colorado*, 427 F.3d 1253, 1262 (10th Cir. 2005).

> First, we must determine whether the employee's speech involves a matter of public concern. If so, we then balance the employee's interest in commenting upon matters of public concern against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. Third, if the balance tips in favor of the employee, the employee then must show

-10-

that the speech was a substantial factor or a motivating factor in the detrimental employment decision. Fourth, if the plaintiff establishes that speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.

*Id*. The first two prongs of the test are legal questions; the second two involve questions of fact. *Hulen v. Yates*, 322 F.3d 1229, 1237 (10th Cir. 2003).

In conducting its analysis of Greenshields' retaliation claim, the district court did not address the first two prongs of the four-part test. *Greenshields*, No. CIV-03-0020-F, at 2. Instead, the court based its grant of summary judgment on the third and fourth prongs of the test. It concluded Greenshields failed to present any evidence to show her letters or her lawsuit were substantial or motivating factors in Stillwater's decision not to renew her contract. *Id*. at 5–6. It also determined the evidence showed Greenshields' contract would not have been renewed even if she had not engaged in speech protected by the First Amendment. *Id*. at 6.

Greenshields argues, without citation to authority, that the district court erred when it skipped the first two steps of the four-part test. Her argument is without merit. In another § 1983 retaliation case, this court assumed without deciding that an employee's speech was constitutionally protected. *Setliff v. Mem'l Hosp. of Sheridan County* 850 F.2d 1384, 1393 (10th Cir. 1988). We went on to uphold the lower court's grant of summary judgment because the employee

failed to establish a causal link between his speech and the adverse employment action taken by his employer. *Id.* at 1393; *see also Smith v. Dunn*, 368 F.3d 705, 708 (7th Cir. 2004) (noting an employee's failure to establish a genuine issue as to the employer's motivation was dispositive and rendered unnecessary an inquiry into whether the employee's speech was constitutionally protected). In short, in a retaliation case, an employee's failure to show that her protected speech was a substantial or motivating factor in bringing about an adverse employment action may be dispositive. If it is, a court need not perform an analysis under the first two prongs of the four-part test.

Greenshields also contends the district court erred by weighing the evidence in a summary judgment context. She asserts a district court cannot determine questions of fact at the summary judgment stage. Because the third and fourth prongs of the four-part test involve issues of fact, Greenshields claims those prongs must be left for the jury to decide. Accordingly, she argues, the district court erred when it granted Stillwater's motion for summary judgment under the third and fourth prongs of the four-part test.

At the summary judgment stage, the court's function is not to weigh evidence and find the truth, it is instead to determine whether there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A court must, however, enter summary judgment against a party who "fails to

make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  At the summary judgment stage, a court asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

In the instant case, the district court determined all the evidence presented supported the Board's position, namely, that Greenshields was not reemployed because she refused to teach the learning modules, refused to follow instructions from her supervisors, refused to meet with her supervisors, and refused to follow the directives set forth in the APIs.  *Greenshields*, No. CIV-03-0020-F, at 5.  The court noted Greenshields presented nothing to controvert the evidence in support of Stillwater's position, and presented nothing to suggest that her speech—her letters to school administrators and members of the Board and her suit against Stillwater—motivated the Board's decision not to renew her contract.  *Id.* Viewing the evidence before it, the district court concluded Greenshields failed to establish an element essential to her claim.  *Id.* at 3, 5–6.  Contrary to Greenshields' assertions, the district court did not weigh the evidence.  Instead, it simply determined there was *no* evidence to support Greenshields' claim.  We discern no error in the district court's approach.

**B.     Genuine Issue of Material Fact**

Greenshields contends she presented to the district court sufficient evidence to demonstrate the existence of a genuine issue of material fact as to the motivation behind the Board's vote to not to reemploy her. Accordingly, she argues the district court erred when it entered summary judgment in favor of Stillwater.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Liberty Lobby*, 477 U.S. at 247–48. "When the party moving for summary judgment makes a showing that there is no evidence to establish an essential element of the claim, the burden then shifts to the party opposing the motion. That party must respond with evidence or citations to the record that dispute the motion for summary judgment." *McKibben v. Chubb*, 840 F.2d 1525, 1532 (10th Cir. 1988). In other words, a plaintiff "must make more than conclusory allegations regarding his First Amendment claim" to avoid summary judgment. *Setliff*, 850 F.2d at 1392.

In evaluating a plaintiff's retaliation claim, "it is essential to identify the speech which resulted in the alleged retaliation." *Hulen*, 322 F.3d at 1237. In her appellate brief, Greenshields contends her protected speech included her letters to school administrators and members of the school board, her December 2002

lawsuit, and her refusal to teach the learning modules and to follow the terms of the APIs. Although her First Amended Complaint arguably raised the argument that Greenshields' protected speech included her refusal to teach from the learning modules and failure to comply with the terms of Winkle's APIs,[4] her arguments before the district court did not. Nothing in Greenshields' response in opposition to Stillwater's motion for summary judgment reasonably can be construed as an argument that her speech included her refusal to teach from the learning modules and her noncompliance with Winkle's APIs. Instead, the arguments contained in Greenshields' response brief contend only that her protected speech consisted of letters she wrote to school administrators and members of the Board and her December 2002 lawsuit.[5]

This court will not consider claims that have been waived or abandoned in the district court. *O'Connor v. City & County of Denver*, 894 F.2d 1210, 1214 (10th Cir. 1990). Because Greenshields' response brief before the district court

---

[4]Greenshields' First Amended Complaint alleged her failure to teach using the learning modules resulted in "workplace harassment and retaliation that included, *inter alia*, admonitions and an extremely hostile work environment from and created by her building principal and other administrators working for [Stillwater]." ROA, Appellant's App. vol. I at 57.

[5]Greenshields' response brief makes clear her belief that her December 2002 lawsuit was the cause of the Board's decision not to renew her teaching contract. "Simply put," she writes, "Greenshields received a very poor evaluation and was terminated following her filing of a lawsuit in Payne County." ROA, Appellant's App. vol. I at 366.

did not include arguments that the protected speech at issue included her refusal to teach using the learning modules and her refusal to follow the terms of Winkle's APIs, this court will not consider such arguments for the first time in this appeal. We therefore examine Greenshields' argument that her protected speech consisted only of her letters to school administrators and Board members and her December 2002 lawsuit.

Even viewed in the light most favorable to Greenshields, the pleadings, affidavits, and supporting materials do not support Greenshields' contention that she presented sufficient evidence from which a jury could conclude the Board voted to not reemploy her in retaliation for her allegedly protected speech. The Board presented evidence demonstrating Greenshields' speech played no role in its decision not to renew her contract. When the Board voted to not reemploy Greenshields, its findings of fact did not reference her letters or her lawsuit; instead, the Board noted Greenshields' unprofessional conduct, violation of school policies, and insubordinate behavior. Affidavits from individual members of the Board similarly reveal they voted not to reemploy Greenshields for the reasons set forth in the Boards' findings of fact, not because of Greenshields' letters or lawsuit.

Greenshields contends she has presented evidence sufficient to cast doubt on Stillwater's explanation of its decision not to reemploy her. She argues the

-16-

Oklahoma state court's decision to reinstate her as a teacher indicates the evidence does not overwhelmingly favor Stillwater. The state court's decision, however, determined Greenshields had the right to select her own teaching methodology as a matter of state law. It did not determine the Board's reasons for not reemploying Greenshields were pretextual. Nothing in the state court's ruling suggests the Board voted not to reemploy Greenshields because of the letters she wrote or because she filed a lawsuit against Stillwater.

Greenshields also argues Stillwater's finding that she was an incompetent teacher is unworthy of belief because the evidence establishes she was an excellent teacher. Teachers, however, have responsibilities outside the classroom. While Greenshields may have excelled in front of her students, that in no way controverts the evidence that she refused to teach using the learning modules, violated school policies, and failed to follow the directives of her supervisors. Again, Greenshields has offered nothing to suggest the Board reached its decision to not reemploy her because of Greenshields' letters or lawsuit.

Greenshields' other attempts to undermine the Board's stated reasons for not renewing her teaching contract also fail. They all rely on Greenshields' claim that her speech included her refusal to teach using the learning modules and her failure to follow the directives of her supervisors. As noted above, Greenshields

did not make such arguments before the district court, and this court will not consider them here.

After a *de novo* review of the parties' briefs and contentions, the district court's order, and the entire record on appeal, we agree with the district court's conclusion that Greenshields failed to establish any genuine issue of material fact and thus failed to prove her protected speech was a substantial and motivating factor in Stillwater's adverse employment action. This court affirms the entry of summary judgment in favor of defendant Stillwater for substantially the same reasons stated by the district court in its order dated May 24, 2004.

## IV. CONCLUSION

For the reasons stated above, the judgment of the United States District Court for the Western District of Oklahoma is **affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge